```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


MONIQUE MORVANT SUFFERN,                            CIVIL ACTION
WIFE OF/AND PATRICK W. SUFFERN
INDIVIDUALLY AND AS REPRESENTATIVES
OF ALL THOSE SIMILARLY SITUATED

VERSUS                                              NO. 06-0358

COUNTRYWIDE HOME LOANS, INC.                        SEC. "B"(2)
```

### ORDER & REASONS

Defendant Countrywide Home Loans, Inc. ("Countrywide") moves the Court for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Rec. Doc. No. 6). For the following reasons, Defendant's motion is hereby **GRANTED**.[1]

### Background

Defendant Countrywide is a foreign corporation authorized to do business in the State of Louisiana. Plaintiffs, Monique Suffern and Patrick Suffern (collectively "the Sufferns"), placed a mortgage on their home in Metairie on July 28, 2003. The mortgage was assigned to Countrywide. (Rec. Doc. No. 1 at "Ex.

---

[1] Oral argument scheduled for July 12, 2006 at 9:00 a.m. is hereby **CANCELLED** in view of the sufficiency of parties' briefing and this Order and Reasons.

1¶3"). The home which secured the Countrywide mortgage was severely damaged in Hurricane Katrina. (Rec. Doc. No. 1 at "Ex. 1¶4"). The Sufferns filed an insurance claim with State Farm, Petitioners' insurance carrier and received $152,488 dollars on November 7, 2005 from Sate Farm. (Rec. Doc. No. 1 at "Ex. 1¶4&5"). The check was endorsed to Countrywide, pursuant to the terms of the Countrywide mortgage.[2]

In November, 2005, Plaintiffs requested disbursement of $35,000 dollars, the amount used to make certain repairs, and $40,000 dollars for future restoration. (Rec. Doc. No. 1 at "Ex. 1¶¶8&9"). On December 19, 2005, Countrywide disbursed $15,000. (Rec. Doc. No. 1 at "Ex. 1"). On December 28, 2005, an inspection took place, where the Countrywide inspector concluded Plaintiffs had completed 85% of the necessary repair/reconstruction. (Rec. Doc. No. 1 at "Ex. 1¶¶9-10"). On January 19, 2006, Countrywide released the full amount.[3]

In January, 2006, Plaintiffs brought the instant Class Action Petition for Fraud, Damages, Penalties, Attorney's Fees

---

[2] The term at issue states "insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, [Countrywide] shall have the right to hold such insurance proceeds until [Countrywide] has had an opportunity to inspect such Property to ensure the work has been completed to [Countrywide's] satisfaction, provided that such inspection shall be undertaken promptly." (Petition "Ex. A").

[3] There is no dispute that additional disbursements are not currently due to the individual Plaintiffs.

and Costs, (Rec. Doc. No. 1), seeking injunctive relief ordering Countrywide to disburse insurance proceeds pursuant to the terms of the mortgage agreement. Defendants filed for judgment on the pleadings (Rec. Doc. No. 6). Plaintiffs allege Countrywide's unreasonable and fraudulent delay in disbursing insurance proceeds paid pursuant to the Sufferns' homeowner's insurance policy constitute breach of the mortgage agreement and violate the Louisiana Unfair Trade Practices Act ("LUTPA").[4] Based on the Sufferns' Complaint and opposition to the instant motion, the Sufferns have received all moneys they were due. Countrywide made the complete disbursement on January 19, 2006. Suit was filed on January 27, 2006. (Rec. Doc. No. 1).

## Law and Analysis

**A. Rule 12(b)(c)**

Countrywide moved for judgment on the pleadings pursuant to Rule 12(c), rather than for dismissal for failure to state a claim under Rule 12(b)(6). However, the Fifth Circuit has recently noted that "Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same." Great Plains Trust Co.

---

[4]Plaintiffs purport to represent a putative class of petitioners of the following class of individuals: All persons, businesses an entities who or which have mortgages issued, owned, held or serviced by Countrywide Home Loans, Inc. on insured properties damaged in Hurricane Katrina whose insurance proceeds have been turned over to and held by Countrywide. (Rec. Doc. No. 1 at "Ex. 1¶19").

v. Morgan Stanley Dean Witter, 313 F.3d 305, 313 n.8 (5th Cir. 2002).  A motion for judgment on the pleadings is designed to dispose of cases where the material facts are not disputed, and a judgment on the merits of the claims can be rendered by examination of the substance of the pleadings.  Id.  For purposes of this motion, the Court accepts the well-pleaded facts as true, and construes any disputed facts in favor of the Plaintiffs, but it does not accept conclusory allegations or legal conclusions masquerading as factual conclusions as sufficient to defeat the motion.  See Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

**B. LUTPA Claims:**

The instant petition makes individual and putative class based LUTPA claims. Section 1406 of LUPTA provides for certain exemptions from LUPTA. It provides, in pertinent part:

> The provisions of this Chapter shall not apply to:
> (1) Actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, commissioner of financial institutions, the insurance commissioner, the financial institutions and insurance regulators of other states, or federal banking regulators who possess authority to regulate unfair or deceptive trade practices.

La. R.S. 51:1406(A)(1) (emphasis added).

The Louisiana Residential Mortgage Lending Act, La. R.S.

4

6:1080, et seq. ("RMLA")[5] regulates "residential mortgage lending activity," which includes "residential mortgage loans."[6] The Sufferns' loan with Plaza Mortgage Company, Inc. ("Plaza"), a "residential mortgage lender,"[7] is governed by the RMLA because Plaza provided funding for a residential mortgage. Plaza engages in "residential mortgage lending activity."[8] This loan was subsequently assigned to Countrywide, also a residential mortgage lender. (Rec. Doc. No. 6 at 6 & "Ex. B") (citing Countrywide's

---

[5] La. R.S. 6:1084 provides: "No person, directly or indirectly, shall engage in a residential mortgage lending activity in this state without complying with the provisions of this Chapter or the rules or regulations promulgated pursuant to this Chapter."

[6] A "residential mortgage loan" is defined in La. R.S. 6:1083(12) as:

> (a) A federally related mortgage loan, which is entered into on a closed-end credit basis as defined by 12 CFR § 226.2(a)(10).
>
> (b) A consumer loan secured by a mortgage on residential immovable property not specifically contracted for under the Louisiana Consumer Credit Law. Consumer loans otherwise subject to the Residential Mortgage Lending Act may be made contractually subject to the Louisiana Consumer Credit Law by specifically stating that the loan is subject to the Louisiana Consumer Credit Law.

[7] A "Residential mortgage lender" means "a person who engages in a residential mortgage lending activity as a mortgage broker or mortgage lender, or both." La. R.S. 6:1083(10).

[8] "Residential mortgage lending activity" means an activity, including electronic activity, engaged in for compensation or with the expectation of compensation in connection with a residential loan transaction, including the origination or funding of a residential mortgage loan and the negotiation and placement, or offering to negotiate, place, or find a residential mortgage loan for another person. La. R.S. 6:1083(11).

listing as a licensed mortgage lender).  Therefore, Countrywide is a mortgage company subject to the commissioner of financial institutions. The Court finds that Countrywide is subject to the jurisdiction of the commissioner of financial institutions. Therefore, it is exempt from the provisions of the LUTPA. See Daigle v. Trinity United Mortgage, L.L.C, 890 So. 2d 583, 590 (La. App. 3 Cir. 11.10.04) (finding mortgage lending company exempt from provisions of LUTPA where company made residential loan).

Moreover, La. R.S. § 51:1409(A) specifically provides  that "any person who suffers any ascertainable loss of money or movable property [ ] as a result of [an] act or practice declared unlawful by R.S. 51:1405 [LUTPA] may bring an action individually but not in a representative capacity to recover actual damages." (emphasis added). On this basis, the Court must dismiss all class claims based on LUTPA. See Iberia Credit Bureau Inc. v. Landry, 379 F.3d 159 (5th Cir. 2004) (applying provision in putative class action). Hamilton v. United Healthcare of Louisiana, Inc., 310 F.3d 385, 393 (5th Cir. 2002) ("the LUTPA does not allow class action claims"); Morris v. Sears, Roebuck & Co., 765 So. 2d 419, 421-22 (La. App. 4 Cir. 2000).

**C. Breach-of-contract & Fraud**:

Under Louisiana law "[c]ontracts have the effect of law for the parties [and] must be performed in good faith." La Civ. Code art. 1983. Plaintiffs allege that the mortgage agreement creates a binding contract with Defendants actions outlined in ¶¶7-15

state a claim for breach of contract. In sum, those paragraphs of the Petition explain that in November, 2005, Plaintiffs requested disbursement of the $35,000 dollars used to make certain repairs and $40,000 for future restoration. (Rec. Doc. No. 1 at "Ex. 1¶¶8&9"). On December 19, 2005, Countrywide disbursed $15,000.(Rec. Doc. No. 1 at "Ex. 1"). On December 28, 2005, an inspection took place, (Rec. Doc. No. 1 at "Ex. 1¶¶9-10"), and on January 19, 2006, Countrywide released all sums due. In Plaintiff's opposition to the instant motion, the Sufferns list a series of annoyances and inconveniences they experienced prior to obtaining the January 19, 2006 disbursement. (Rec. Doc. No. 10 at 3).

Unfortunately, the Court is unable to find the inconveniences amount to breach-of-contract or fraud. The Plaintiff has not pointed the Court to any specific provisions that require Countrywide to schedule inspections within a certain period of time- in fact, the agreement gives Countrywide the right to inspect the property prior to disbursement "provided that such inspection shall be undertaken promptly." The Court notes that given the number of inspections required following Hurricane Katrina, three weeks to conduct such inspection may actually be "prompt." However, even if the delay was not "prompt," Countrywide remedied the potential delay by providing Plaintiffs with $15,000 dollars on December 19, prior to

7

conducting any inspection. (Petition ¶9). The Defendant provided Plaintiffs with the full amount due three weeks after conducting the December 28, 2005 inspection. This inspection was conducted a month following Plaintiffs' written request for disbursement to Countrywide. Cf. (Petition ¶8) with (Petition ¶10).

Furthermore, Plaintiffs' claims of fraud have not been stated with any particularity, as required under Federal Rules of Civil Procedure 9(h) and 9(f).[9] Plaintiffs allege that based on a company-wide policy of inaction and refusal to timely conduct inspections and adequately disburse funds, Defendant fraudulently maintained control of the funds for Countrywide's economic benefit. (Rec. Doc. No. 10 at 7). Even when the Court considers the additional facts included in Plaintiffs' opposition, the Court is unable to find that Plaintiffs stated their claims with sufficient particularity. For the foregoing reasons, the Court dismisses the fraud and breach-of-contract claims, individually and for the putative class members.

New Orleans, Louisiana, this 12th day of July, 2006.

                        IVAN L.R. LEMELLE
                        UNITED STATES DISTRICT JUDGE

---

[9] Fed. R. Civ. P. 9(b) states, in pertinent part, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally."